**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **VINCENT SIMIEN,**<br><br>                Plaintiff<br><br>        v.<br><br>**ALEJANDRO N. MAYORKAS**, in his official capacity as Secretary of the United States Department of Homeland Security**,**<br><br>                Defendant. | Case No. 23-cv-888 (CRC) |

## OPINION AND ORDER

The Federal Emergency Management Agency ("FEMA") terminated Plaintiff Vincent Simien for misconduct and canceled his pending transfer to a different office within the agency, soon after he complained that his supervisor was singling him out for unfair treatment. Based on those actions, Mr. Simien, who is African American, has sued the Secretary of FEMA's parent agency, the Department of Homeland Security, in his official capacity, for retaliation, racial discrimination, and maintaining a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. The government has moved to dismiss all but Simien's retaliation claim. Simien opposes dismissal and separately moves for leave to amend his original complaint to beef up its allegations. Finding the proposed amended complaint still does not plead a valid discrimination or hostile work environment claim, the Court will grant the government's partial motion to dismiss and deny Simien leave to amend those claims. The Court will, however, permit leave to amend the still-live retaliation claim.

I.   **Background**

The Court draws the following background from the allegations in the proposed amended complaint, which the Court must accept as true in deciding the government's motion to dismiss and whether to permit the amendment.

Vincent Simien, who is African American, worked as a Reservist in FEMA's Public Assistance Cadre.  Prop. Am. Compl., ECF No. 37, ¶¶ 7, 22.  During his tenure, Simien claims his supervisor, Peggy Kemler, who is white, "singled [him] out . . . in front of his peers and subjected [him] to humiliation, mocking, and undue criticism," required him to work overtime without compensation, "continuously called [him] to check [his] work, was rude, hung up the telephone," criticized his work, and failed to provide him with adequate guidance.  Id. ¶¶ 48–51, 55–59.  In June 2016, when Simien went to report Kemler's behavior to an EEO counselor, a FEMA Task Force Lead, Brian Slie, allegedly interrogated him, told the EEO counselors that everything he would say would be a lie, and brought armed officers to wait outside the door during Simien's intake interview.  Id. ¶¶ 12, 14, 16.  A month later, another FEMA supervisor, Laycee Kent, fired him.  Id. ¶ 22.

According to Simien, Kent justified her decision to cashier him on four alleged incidents of improper conduct, each of which he recounts, and disputes, in the proposed amended complaint.  First, Simien was accused of "impersonating a FEMA Security Officer" by falsely representing that he was "conducting a 'safety and security check on [a] hotel.'"  Id. ¶¶ 26, 52.  In Simien's telling, however, Kemler told him to "scout" local hotels while on a business trip, and though he did ask various hotels about safety issues at their properties while wearing FEMA clothing, he contends that his inquiries "should not [have been] construed as him performing safety and security checks in his official capacity."  Id. ¶¶ 28–30, 52, 54.  Second,

Simien allegedly told a coworker that Kemler "would get 'four flat [tires] and into a [car] accident.'" Id. ¶ 31. Simien retorts that he "never said anything about a car accident" but does not appear to dispute his comment about the four flat tires. Id. ¶ 32. Third, Simien was accused of calling coworkers "old man," "kid," and "stupid." Id. ¶ 34. Simien denies having used the first two terms and explains that while he may have said "stupid to refer to a joke," "[t]his conversation occurred in private with a coworker that Plaintiff was friends with." Id. ¶¶ 35–36. Finally, Simien allegedly "commented to another hotel guest that he would 'stab her with a plastic fork.'" Id. ¶ 38. Simien says this communication never occurred. Id. ¶ 39.

Presumably in response to these alleged infractions, though the proposed amended complaint is not clear, Mr. Slie recommended that Simien receive "additional job skills training and training in the area of interpersonal skills." Id. ¶ 17. But the deciding official, Ms. Kent, determined that training was insufficient and proceeded with termination, noting the agency's "zero tolerance for threats regardless of whether they are jokes[.]" See id. ¶¶ 20–21. At that time, Simien had already accepted a Reservist Security Manager position with another FEMA office. Id. ¶ 43.[1] That offer was subsequently withdrawn because the "hiring officials ha[d] determined that they d[id] not wish to pursue with the transfer" based on "recent notifications regarding [Simien's] FEMA employment history[.]" Id. ¶¶ 43, 45. Simien claims his termination and the withdrawn job offer constituted racial discrimination and retaliation (Count 1), id. ¶¶ 61–62, and that FEMA subjected him to a discriminatory and retaliatory hostile work environment (Count 2), id. ¶¶ 68, 70.

---

[1] Because Simien refers to the new position as a "transfer," the Court assumes that it was also within FEMA, though it is not clearly stated in the original or proposed amended complaint. In any case, the location of the job is not material to the resolution of the pending motions.

The government moved to dismiss Simien's hostile work environment and discrete discrimination claims, contending that the actions alleged were not sufficiently "severe and pervasive" to constitute a hostile work environment and that Simien had failed to adequately connect any of the actions, including his termination and the withdrawn job offer, to his race or sex. See Partial Mot. Dismiss at 4–10. In his opposition to that motion, Simien maintained that a "theme of being singled out" "emerges" from his complaint, which is sufficient to support both a hostile work environment claim and an inference of racial discrimination. Pl.'s Opp'n at 2–5. He simultaneously moved for leave to file an amended complaint, seeking to address arguments in the motion to dismiss. See Mot. Amend at 2. The proposed amended complaint adds a few new factual allegations, see, e.g., Prop. Am. Compl. ¶ 45, while removing Simien's previously alleged sex discrimination claim, compare Compl. ¶ 61 with Prop. Am. Compl. ¶ 68. As directed by the Court, the government filed a consolidated reply and opposition to the motion for leave to amend contending that leave should be denied, and its motion to dismiss granted, because Simien failed to comply with Local Civil Rule 7(m)'s meet-and-confer requirement and that the proposed amendments would still fail to state claims of discrimination or hostile work environment. Def.'s Opp'n at 1–8. Though the Court prompted Simien to reply to the government's opposition, see Min. Order (Oct. 19, 2023), he has not done so. Both motions are therefore fully briefed and ripe for review.

## II. Legal Standards

The government has moved to dismiss Simien's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. To survive this motion, the complaint must present "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A reviewing court must construe the complaint "liberally

in the plaintiffs' favor" and "grant plaintiffs the benefit of all inferences that can be derived from the facts alleged," but is not required to "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint" or to "accept legal conclusions cast in the form of factual allegations." Kowal v. MCI Comm'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994) (internal citations omitted). A complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Atchinson v. District of Columbia, 73 F.3d 418, 422 (D.C. Cir. 1996) (citations omitted).

As for Simien's motion for leave to amend his complaint, Federal Rule of Civil Procedure 15(a)(2) provides that a plaintiff may only file an amended complaint more than 21 days after service of a motion under Rule 12(b) with the opposing party's consent or with leave of court. Leave to amend a complaint is to be "freely given when justice so requires," but may be denied due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment," or "futility of amendment." Foman v. Davis, 371 U.S. 178, 182 (1962) (quoting Fed. R. Civ. P. 15(a)). Where an "amended [c]omplaint could not withstand a motion to dismiss," it is "futile." Moldea v. N.Y. Times Co., 22 F.3d 310, 319 (D.C. Cir. 1994).

### III. Analysis

The Court begins with the government's contention that the Court should deny leave to amend the complaint due to Simien's counsel's failure to comply with the Court's local rules. Opting to overlook counsel's transgression, the Court will then assess whether granting leave to amend would be futile.

A.  <u>Compliance with Local Civil Rule 7(m)</u>

Local Civil Rule 7(m) provides: "Before filing any nondispositive motion in a civil action, counsel shall discuss the anticipated motion with opposing counsel in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is, to narrow the areas of disagreement."  It further requires that a party "shall include in its motion a statement that the required discussion occurred, and a statement as to whether the motion is opposed." LCvR 7(m).  Simien's nondispositive motion to amend the complaint does not include such a statement and government counsel represents that no discussion of the motion in fact occurred. Def.'s Opp'n at 2.  Simien does not respond to this argument—indeed, he does not respond to the government's opposition at all—effectively conceding that the motion is in breach of Rule 7(m). "Under these circumstances," the government contends, "the Court should deny Simien's motion to amend complaint."  <u>Id.</u>

But finding that "Local Rule 7(m) has been violated . . . is not the end of the analysis" as "[b]reach raises the further question of remedy."  <u>Steele v. United States</u>, No. 14-cv-1523-RCL, 2023 WL 6215790, at *3 (D.D.C. Sept. 25, 2023).  And here, denying the motion would violate the spirit of Rule 15's instruction that a "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  Aside from its futility arguments, the government does not suggest that allowing the amendments would be unjust due to factors like "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, [or] undue prejudice[.]"  <u>Foman</u>, 371 U.S. at 182.  In addition, the Court generally tries "to avoid prejudicing litigants for their counsel's errors."  <u>Niedermeier v. Off. of Baucus</u>, 153 F. Supp. 2d 23, 27 (D.D.C. 2001).  The Court will therefore exercise its discretion to consider Simien's proposed amendments despite the breach of local rules.

B. <u>Futility</u>

Both Simien's original and proposed amended complaints include the following Title VII claims, pled across two counts: (1) discriminatory hostile work environment, (2) retaliatory hostile work environment, (3) racial discrimination based on the termination and withdrawn job offer, and (4) retaliation based on the termination and withdrawn job offer.  The government's partial motion to dismiss and opposition to Simien's motion to amend address the first three claims, arguing that each should be dismissed for failure to state a claim.  Partial Mot. Dismiss at 11; Def.'s Opp'n at 9.  The Court takes up each of the three claims in turn.

1. *Discriminatory Hostile Work Environment*

Count 2 of the proposed amended complaint charges FEMA with subjecting Simien to a discriminatory and retaliatory hostile work environment.  Prop. Am. Compl. ¶¶ 67–73.  Taking the discriminatory hostile work environment claim first, according to Simien, his supervisor, Peggy Kemler, consistently singled him out for humiliation and criticism, required him to work overtime without compensation, was rude to him, frequently called him and hung up the phone, suggested that wearing FEMA attire would "lead the public to believe that [Simien] was acting in an official capacity," failed to respond to his requests for additional training, criticized his work, and made unspecified "comments" "leading [Simien] to ask her for respect."  <u>Id.</u> ¶¶ 47–59.  Simien further alleges that other employees were not treated the same way, including two of his white coworkers.  <u>Id.</u> ¶¶ 50, 57.  He claims he "has good reason to believe that he was being singled out due to his race" because "[n]o other person . . . [was] subjected to this level of extra scrutiny and criticism" and has therefore plausibly alleged a discriminatory hostile work environment.  Pl.'s Opp'n at 2–3.

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e–2(a)(1). An employer violates this prohibition when it requires people to work "in a discriminatorily hostile or abusive environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (citing Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 64 (1986)). To demonstrate that a discriminatory hostile work environment exists, "a plaintiff must show that his employer subjected him to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Baloch v. Kempthorne, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (quoting Harris, 510 U.S. at 21). In considering such a claim, it is important "to exclude from consideration personnel decisions that lack a linkage of correlation to the claimed ground of discrimination." Bryant v. Brownlee, 265 F. Supp. 2d 52, 63 (D.D.C. 2003) (quoting Alfano v. Costello, 294 F.3d 365, 377 (2d Cir. 2002)). "[H]ostile behavior, no matter how unjustified or egregious, cannot support a claim of hostile work environment unless there exists some linkage between the hostile behavior and the plaintiff's membership in a protected class." Na'im v. Clinton, 626 F. Supp. 2d 63, 73 (D.D.C. 2009) (collecting cases). These "demanding" standards "ensure that Title VII does not become a general civility code." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (cleaned up).

Simien's discriminatory hostile work environment claim fails to meet these standards. First, "none of the comments or actions [allegedly] directed at [Simien] expressly focused on his race[.]" Baloch, 550 F.3d at 1201. Simien contends that Kemler "singled [him] out" for "extra scrutiny and criticism," Pl.'s Opp'n at 3, and "spoke rougher" to him than his white coworkers "regarding the same request for additional professional training," Prop. Am. Coml. ¶ 57. But

"simply having a rude, harsh, or unfair boss is not enough for a hostile work environment claim." Dudley v. Washington Metro. Area Transit Auth., 924 F. Supp. 2d 141, 166, 171–72 (D.D.C. 2013) (collecting cases). And Simien "does not explain how this harsh tone was significantly more severe or pervasive than any other rude or demanding boss, and does not show that [Kemler's] criticism involved threats of violence, serious intimidation, or racial insults." Id. at 171 (rejecting a hostile work environment claim where the employee similarly alleged that his supervisor talked to him "in a harsh, critical, and condescending tone," and "singl[ed him] out" for criticism).

Moreover, even if Simien's allegation that Kemler singled him out was sufficient to connect the alleged hostile work environment to his race, "not all abusive behavior, even when it is motivated by discriminatory animus, is actionable." Stewart v. Evans, 275 F.3d 1126, 1133 (D.C. Cir. 2002) (citation omitted). Where, as here, the plaintiff merely alleges that he was "unfairly criticized and closely scrutinized; falsely accused of misconduct; and denied access to trainings," these "ordinary workplace tribulations" fail to state a claim of hostile work environment. Jimenez v. McAleenan, 395 F. Supp. 3d 22, 37–38 (D.D.C. 2019). And while conduct like "mocking," "[being] rude," and "humiliat[ing]" a subordinate could give rise to a plausible hostile work environment claim, neither the original nor the proposed amended complaint offers any facts in support of these thread-bare and conclusory allegations. Prop. Am. Compl. ¶¶ 48, 51. Accordingly, the Court will grant the government's motion to dismiss as to Simien's discriminatory hostile work environment claim.

  2. *Retaliatory Hostile Work Environment*

Simien also alleges that FEMA subjected him to a retaliatory hostile work environment after he contacted an EEO counselor on June 10, 2016. Id. ¶¶ 8, 68–71. A retaliatory hostile

work environment claim "alleges that [a plaintiff] was subjected to an abusive working environment in retaliation for having engaged in protected activity by complaining of discrimination." Román v. Castro, 149 F. Supp. 3d 157, 166 (D.D.C. 2016). Like discriminatory hostile work environment claims, the constituent acts of a retaliatory hostile work environment claim "must be both 'adequately linked such that they form a coherent hostile environment claim,' and 'of such severity or pervasiveness as to alter the conditions of . . . employment and create an abusive working environment.'" Menoken v. Dhillion, 975 F.3d 1, 6 (2020) (quoting Baird v. Gotbaum, 792 F.3d 166, 168–69 (D.C. Cir. 2015) (cleaned up)). "To determine whether a group of alleged acts is sufficiently linked, courts often consider whether the acts in question 'involve[d] the same type of employment actions, occur[ed] relatively frequently, and [were] perpetrated by the same managers.'" Id. (quoting Baird, 792 F.3d at 169).

Simien points to four alleged retaliatory incidents in support of this claim: (1) FEMA Task Force Lead Brian Slie told EEO counselors that everything Simien would say would be a lie; (2) Slie brought armed officers to wait outside the door during Simien's intake interview; (3) another FEMA supervisor, Laycee Kent, terminated Simien after he had spoken to the EEO counselor; and (4) unspecified "hiring officials," Prop. Am. Compl. ¶ 45, withdrew his job offer for another position at the agency. Pl.'s Opp'n at 3–4. As the government points out, the proposed amended complaint confirms that Ms. Kemler's alleged harassment predates Simien's June 10 protected activity; it therefore cannot support a retaliation claim. See Prop. Am. Compl. ¶¶ 47–59 (dating the alleged incidents of harassment between April 27 and June 10, 2016). Nevertheless, Simien contends that his "termination and the withdrawal of job offer[]" "considered in conjunction with the two incidents that Defendants concede may be timely," referring to Slie's conduct, "meet the[ retaliatory hostile work environment] requirements." Pl.'s

10

Opp'n at 4. But because Simien has failed to allege that the constituent acts of his retaliatory hostile work environment claim were adequately linked or severe and pervasive enough to meet this standard, the Court will dismiss this claim.

"Severity and pervasiveness are determined by reference to 'all the circumstances,' including 'the frequency of the discriminatory [or retaliatory] conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Baird, 792 F.3d at 169 (quoting Harris, 510 U.S. at 23). Mr. Slie's actions, alleged to have taken place on or around a single day, are not sufficiently pervasive to constitute a hostile work environment. And while Simien may have found the maligning of his candor and the presence of security guards "offensive," Slie's conduct does not appear so "extreme [as] to amount to a change in the terms and conditions of employment," particularly given that Simien himself acknowledges he stood accused of making both false statements and violent threats. Faragher, 524 U.S. at 788; see Prop. Am. Compl. ¶¶ 26, 31, 38.

Simien asks the Court to consider Slie's actions in combination with Ms. Kent's decision to terminate him and another office's withdrawal of his transfer position, but this approach has several flaws. First, the termination and transfer withdrawal involve "different people doing different things in different contexts" and are therefore insufficiently linked to each other, or to Slie's actions, to comprise a hostile work environment. Baird, 792 F.3d at 171. Second, the allegations suggest that Kent decided to terminate Simien on the basis of several instances of misconduct *before* he engaged in protected activity, cutting against a finding of retaliation. See Prop. Am. Compl. ¶¶ 20–21 (alleging that when EEO counselors told Kent that Slie had recommended training instead of termination, she stated that she intended to "*proceed* with the

11

termination decision" (emphasis added)).  Third, Simien is, "in effect, seek[ing] to transform his challenges to discrete acts of alleged discrimination or retaliation . . . into a hostile work environment claim by combining those events with a series of ordinary workplace difficulties." Nurriddin v. Bolden, 674 F. Supp. 2d 64, 94 (D.D.C. 2009).  But "mere reference to alleged disparate acts of discrimination against [a] plaintiff cannot be transformed, without more, into a hostile work environment."  Childs–Pierce v. Utility Workers Union of Am., 383 F. Supp. 2d 60, 79 (D.D.C. 2005), aff'd 187 Fed. App'x 1 (D.C. Cir. 2006).  And finally, even taken together, this series of actions does not amount to the kind of "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Harris, 510 U.S. at 21 (citation omitted).  The Court will therefore dismiss Simien's retaliatory hostile work environment claim.

### 3.  Racial Discrimination

Finally, Count 1 of the proposed amended complaint alleges that Simien's termination and the withdrawn job offer were individual acts of racial discrimination.  Prop. Am. Compl. ¶ 61.  To sustain a charge of racial discrimination at the motion to dismiss stage, the factual allegations in the proposed amended complaint need only give rise to the reasonable inference that Simien's race was the reason for the government's actions.  See Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1115 (D.C. Cir. 2000).  Because the allegations in the proposed amended complaint do not give rise to such an inference for either act, the Court will grant the government's motion to dismiss this claim.

The proposed amended complaint alleges that Simien's termination was based on four instances of purported misconduct on his part: (1) falsely representing himself as a FEMA security officer, Prop. Am. Compl. ¶ 26; (2) stating that his supervisor would get four flat tires

12

and suffer a car accident, id. ¶ 31; (3) using inappropriate epithets to describe his coworkers, id. ¶ 34; and (4) telling another hotel guest he would "stab her with a plastic fork," id. ¶ 38. Simien contests the underlying allegations, id. ¶ 25, attacks the credibility of the reporting individuals, id. ¶ 37, and contends FEMA's investigation into the allegations was "defective," id. ¶ 24. But he does not dispute, and in fact affirmatively alleges, that Kent based her termination decision on the agency's "zero tolerance" policy for threats. Id. ¶ 21. Critically, Simien does not allege that Kent terminated him because of his race—the bare requirement to maintain an employment discrimination claim at the motion to dismiss stage. And while Simien protests that Kemler's alleged harassment and "unjustified higher scrutiny" give rise to an inference that his termination was based on his race, Pl.'s Opp'n at 5, the proposed amended complaint does not allege that Kemler was involved in the decision to terminate him. Therefore, the allegations in the proposed amended complaint fail to state a claim for racial discrimination in Simien's termination.

As to the withdrawn job offer, the proposed amended complaint adds that the would-be receiving FEMA office based its decision on "recent notifications regarding [Simien's] FEMA employment history" and the "aforementioned discrimination and retaliation which led to [his] termination." Prop. Am. Compl. ¶¶ 44–45. But Simien's termination from his prior position based on allegations of threatening behavior is a legitimate non-discriminatory reason for withdrawing a job offer. Though Simien again relies on his allegations of "unjustified higher scrutiny" from Kemler to support an inference of racial discrimination, Pl.'s Opp'n at 5, he does not specify who the "hiring officials" who rescinded his job offer were, much less allege that they did so as a result of racial animus. Because Simien has not included sufficient factual allegations to support an inference that the unspecified FEMA office withdrew his job offer on

account of his race, the Court will grant the government's motion to dismiss Simien's racial discrimination claim and deny the motion to amend as futile as to this claim.

## IV. Conclusion

For these reasons, it is hereby

**ORDERED** that [Dkt. No. 27] Defendant's Partial Motion to Dismiss is GRANTED. It is further

**ORDERED** that [Dkt. No. 36] Plaintiff's Motion for Leave to Amend the Complaint is GRANTED in part and DENIED in part. It is further

**ORDERED** that Defendant shall answer or otherwise respond to Plaintiff's remaining retaliation claim by April 22, 2024.

**SO ORDERED**.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: <u>March 21, 2024</u>